# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| MICHELLE PEARSON TUCKER, : <br> individually and as administrator of : <br> the Estate of Clinton Vondell Jackson, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> WELLPATH, LLC, CENTURION : <br> DETENTION HEALTH SERVICES, : <br> LLC, LEWANA STREETER, BRIYANA : <br> INGRAM, and JADE BANKS, : <br> : <br> Defendants. : <br> _____ : | No. 5:24-CV-215 (CAR) |

## ORDER ON DEFENDANTS CENTURION AND STREETER'S
## MOTION TO DISMISS

Plaintiff Michelle Pearson Tucker, individually and as administrator of the Estate of Clinton Vondell Jackson, filed a Complaint alleging violations of Jackson's constitutional rights pursuant to 42 U.S.C. § 1983 and violations of Georgia law following Jackson's suicide while he was incarcerated at Macon State Prison. Defendants Centurion Detention Health Services, LLC, and Lewana Streeter have filed a Motion to Dismiss Plaintiff's Complaint, arguing it fails to state any claim for relief and is an impermissible shotgun pleading. For the reasons explained below, Defendant Centurion and Defendant Streeter's Motion to Dismiss [Doc. 5] is **DENIED**.

1

**LEGAL STANDARD**

On a motion to dismiss, the Court must accept as true all well-pleaded facts in a plaintiff's complaint.[1] To avoid dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[2] A claim is plausible where the plaintiff alleges factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[3] The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports a plaintiff's claims.[4]

**BACKGROUND**

Plaintiff is Clinton Vondell Jackson's sister and the administrator of his estate.[5] Jackson was an inmate at Macon State Prison ("MSP") at the time of his death.[6] The State of Georgia contracts with Defendant Centurion Health Services, LLC ("Centurion") to provide mental and other health services for MSP and with Defendant Wellpath, LLC ("Wellpath") to provide medical services for MSP.[7] Defendant Lewana Streeter is an employee of Centurion and worked for the Georgia Department of Corrections ("GDC")

---

[1] *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009).
[2] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[3] *Id.*
[4] *Bell Atl. Corp.*, 550 U.S. at 556.
[5] Complaint [Doc. 1 ¶ 4].
[6] Doc. 1 ¶ 14.
[7] *Id.* ¶¶ 5, 6.

as the Mental Health Unit Manager for MSP.[8] At all relevant times, Defendants Jade Banks and Briyana Ingram were both GDC officials.[9]

Jackson was housed in a segregated cell in MSP from November 13, 2021, until his death on October 19, 2022.[10] On October 17, 2022, two days before his death, Jackson told Streeter, Banks, Ingram, and medical staff of Centurion and Wellpath that "he was concerned he might harm himself."[11] Streeter, Banks, and Ingram believed these threats were sincere, but did nothing in response.[12] Jackson also expressed his concern for self-harm to a Wellpath employee who filled out a Wellpath Rounding Log on October 17, 2022. No "appropriate action" was taken to protect Jackson, including referring him for further mental health evaluation, placing him in a cell appropriate for one displaying a danger of self-harm, and appropriately monitoring him.[13]

Despite Jackson's suicidal statements to Streeter, Banks, Ingram, and medical staff, Jackson was not moved from his segregated cell, which had a light fixture and bedsheet, and he was left unmonitored for hours.[14] On October 19, 2022, at approximately 2:15 p.m., prison staff found Jackson "hanging from the light fixture by his bedsheet, which he had

---

[8] *Id.* ¶¶ 7, 26.
[9] *Id.* ¶¶ 8, 9.
[10] *Id.* ¶ 15.
[11] *Id.* ¶ 21.
[12] *Id.* ¶¶ 22, 23.
[13] *Id.* ¶ 25.
[14] *Id.* ¶¶ 36, 37.

3

used as a ligature."[15] "A nurse who arrived on the scene within minutes of the discovery" noted "rigor mortis" in Jackson's "upper and lower bilateral extremities," indicating Jackson "was hanging in his cell for at least four to six hours" before he was discovered.[16]

Plaintiff alleges Defendant Streeter, as Mental Health Unit Manager, was responsible for Jackson's care and knew he had expressed threats of self-harm shortly before his death because either Jackson told her or she was told by others that Jackson was "sincerely suicidal."[17] Although Streeter knew Jackson was suicidal, she failed to take any of the "appropriate action[s]" listed above.[18] On October 20, 2022, the day after Jackson died, Streeter filled out a "Restricted Housing Rounds" form indicating that she assessed Jackson, and he "denied any self-harm or suicidal thoughts," despite the fact he had died the day before.[19]

Plaintiff alleges Centurion and Wellpath "had a pattern and practice of turning a blind eye to their patients in prison," and their customs or policies caused Jackson's death.[20] Plaintiff alleges the GDC "has allowed unacceptable levels of suicide to occur in its facilities," and the "rate of suicide in Georgia's prisons is nearly double the national average and among the highest in the nation."[21] Plaintiff alleges the contracts between the

---

[15] *Id.* ¶ 40.
[16] *Id.* ¶¶ 42–44.
[17] *Id.* ¶¶ 26, 27, 28, 29.
[18] *Id.* ¶ 30.
[19] *Id.* ¶ 31.
[20] *Id.* ¶ 57.
[21] *Id.* ¶ 12.

4

GDC and Centurion and Wellpath "create an improper financial motive to provide as little healthcare as possible."[22] Centurion and Wellpath are paid a fixed rate per incarcerated person per day, meaning the "less healthcare they provide, the more they profit. The more staff they pay and the more services they render, the more they lose money."[23] This arrangement "results in a policy and custom of cost containment."[24] Centurion and Wellpath each has a "direct financial motive" not to provide services in favor of the other providing them; Centurion and Wellpath each "acted pursuant to this motive not to provide care as a policy and custom of cost containment," and both "abdicated [their] responsibility to act to protect Mr. Jackson because it hoped [the other] would act to save money."[25]

Plaintiff alleges as a result of these policies, Centurion and Wellpath commonly disregard reports by patients of objectively serious symptoms; refuse to provide adequate treatment to patients; refuse to timely conduct evaluations for patients or comply with referrals to specialists; fail to create sensible treatment plans for patients whose health status requires the same; fail to ensure continuity of care; prioritize profits at the expense of constitutionally adequate care; fail or refuse to arrange for incarcerated men to be

---

[22] *Id.* ¶ 58.
[23] *Id.* ¶¶ 59, 60, 61.
[24] *Id.* ¶ 61.
[25] *Id.* ¶¶ 64, 65.

5

treated in outside facilities, even when an outside referral is necessary or proper; and refuse and/or fail to provide any medical care whatsoever for defined medical problems.[26]

Plaintiff alleges Centurion and Wellpath "also have a practice and custom with regard to records that regularly causes delays and denials of necessary treatment."[27] Specifically, the forms "used for mental health rounding do not require the responsible medical professional completing any evaluation to identify themselves[;]" "do not require a referral in the event someone expresses suicidal ideation[;]" and "facilitate unaccountability and frustrate continuity of care, rather than protecting patients."[28] As a result of these customs and policies, "nothing happened in response to [Jackson's] expression of suicidal ideation."[29]

Plaintiff alleges Centurion "delegated final policymaking authority for the provision of mental health care at Macon State Prison to Defendant Streeter."[30] "There was no higher up that could meaningfully review Streeter's actions or inactions with respect to Mr. Jackson[,]" and Streeter "failed to take any action with respect to Mr. Jackson, other than falsifying records to cover up their misdeeds."[31] "In response to the failures in treatment leading directly to Mr. Jackson's death, neither [Centurion nor

---

[26] *Id.* ¶ 66.
[27] *Id.* ¶ 67.
[28] *Id.* ¶¶ 68–70.
[29] *Id.* ¶ 71.
[30] *Id.* ¶ 75.
[31] *Id.* ¶¶ 76, 77.

6

Wellpath] took any remedial action, evincing that their personnel acted pursuant to training, policy, and custom."[32] Defendants Streeter and Centurion now seek to dismiss Plaintiff's claims against them arguing Plaintiff fails to sufficiently state a claim for relief.

## ANALYSIS

### I. Plaintiff States a Deliberate Indifference Claim Against Defendant Streeter

The Eighth Amendment forbids the infliction of "cruel and unusual punishments."[33] "[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious.'"[34] Second, "a prison official must have a 'sufficiently culpable state of mind'—*i.e.*, 'deliberate indifference.'"[35] The deliberate indifference requirement contains three sub-requirements: (1) the plaintiff must prove the official was subjectively aware that the inmate was at risk of serious harm; (2) the plaintiff must show the official disregarded that risk; and (3) the plaintiff must prove "the defendant acted with 'subjective recklessness as used in the criminal law.'"[36] To prove subjective recklessness, "the plaintiff must show that the defendant was subjectively aware that his own conduct put the plaintiff at substantial risk of serious harm—with the caveat that, in any event, a

---

[32] *Id.* ¶ 78.
[33] U.S. Const. amend. VIII; *see Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024).
[34] *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citation omitted).
[35] *Wade*, 106 F.4th at 1255 (quoting *Farmer*, 511 U.S. at 834).
[36] *Id.* at 1255 (quoting *Farmer*, 511 U.S. at 839).

defendant who 'respond[s] reasonably' to a risk, even a known risk, 'cannot be found liable' under the Eighth Amendment."[37]

Plaintiff sufficiently states a deliberate indifference claim against Streeter. Streeter argues Plaintiff fails to sufficiently allege she subjectively knew that her actions or inactions would cause a substantial risk of serious harm.[38] Specifically, Streeter argues that if Plaintiff's allegations are true, (1) Streeter could not have subjectively known her actions or inactions would cause Jackson's death, and (2) her responses were reasonable because the "conditions already in place were sufficient."[39] The Court disagrees.

First, Plaintiff alleges medical staff are required to refer offenders who may be suicidal for immediate assessment and treatment, and, accepting Plaintiff's allegations as true, as the Court must at this stage of the proceeding, Streeter did not refer Jackson for further assessment and treatment despite knowing he was suicidal.[40] Second, Plaintiff alleges there are precautions to prevent self-harm by prisoners, such as continuous observation consisting of a 15-minute watch, placement within the continuous line-of-sight of staff members, assignment to suicide-resistant cells with recessed lighting, and the provision of suicide-resistant bedding.[41] Plaintiff alleges these precautions were not taken despite Streeter's knowledge that Jackson was suicidal. Instead, Jackson was left in

---

[37] *Id.* (citations omitted).
[38] Defendants' Brief in Support of Motion to Dismiss [Doc. 6 at 9].
[39] *Id.* at 9–10.
[40] Doc. 1 ¶¶ 16, 21–23, 27, 30.
[41] *Id.* ¶ 19.

8

a cell with bed sheets and a lighting fixture which he used to hang himself, and was not found for four to six hours.[42] Finally, Plaintiff alleges Streeter falsified a "Restrictive Housing Rounds" form the day after Jackson died stating that she had evaluated him on that date, and he "denied any self-harm or suicidal thoughts," despite the fact he was already dead.[43] Thus, Plaintiff sufficiently alleges Streeter believed Jackson to be suicidal, did not refer him for further treatment, left him in a cell for multiple days with the tools necessary to kill himself, and then attempted to falsify records to cover up her actions. These allegations, taken as true, plausibly allege that Streeter was "subjectively aware that [her] own conduct caused a substantial risk of serious harm"[44] to Jackson and that she did not "respond[] reasonably to the risk."[45]

## II.   Plaintiff States a *Monell* Liability Claim Against Defendant Centurion

"When private entities like . . . Centurion contract with a state to provide medical care to inmates, they become 'the functional equivalent of the municipality' because they perform a function traditionally and exclusively within the state's prerogative."[46] For a municipality to be liable, the plaintiff must "establish that the government unit has a

---

[42] *Id.* ¶¶ 20, 24, 30, 36, 40, 42, 43.
[43] *Id.* ¶ 31.
[44] *Wade*, 106 F.4th at 1262.
[45] *Farmer*, 511 U.S. at 844; *Wade*, 106 F.4th at 1262.
[46] *Hernandez v. GEO Grp.*, No. 23-13653, 2024 WL 3963947, at *4 (11th Cir. Aug. 28, 2024) (citing *Buckner v. Toro*, 116 F.3d 450, 451–52 (11th Cir. 1997)).

9

'policy or custom' that caused the injury."[47] "A municipality may not be held liable under section 1983 on a theory of respondeat superior."[48] Additionally, the plaintiff must show "a direct causal link between [the] policy or custom and the alleged constitutional deprivation."[49]

There are multiple methods of proving custom or policy.[50] First, "in cases involving unconstitutional acts of low-level municipal employees, the plaintiff may prove custom or policy by showing a pattern of unconstitutional acts."[51] Second, "under certain circumstances, municipal liability may be imposed for a single decision by a municipal policymaker."[52] But "the mere delegation of authority to a subordinate to exercise discretion is not sufficient to give the subordinate policymaking authority. Rather, the delegation must be such that the subordinate's discretionary decisions are not constrained by official policies and are not subject to review."[53] The official must be "the final policymaker for the municipality with respect to the subject matter in question."[54] Third, "[i]f the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the [defendant] because their decision is

---

[47] *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1328 (11th Cir. 2015) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).
[48] *Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262, 1270 (11th Cir. 2005) (citing *Harris*, 489 U.S. at 385).
[49] *Harris*, 489 U.S. at 385.
[50] *See Mandel v. Doe*, 888 F.2d 783, 791 (11th Cir. 1989).
[51] *Id.* at 791 (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985)).
[52] *Id.* at 792 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)).
[53] *Id.* (citing *City of Louis v. Praprotnik*, 485 U.S. 112, 125–28 (1988)).
[54] *Id.* at 793.

final."[55] Fourth, the plaintiff can establish custom or policy by identifying an "officially-adopted policy of permitting a particular constitutional violation."[56]

Plaintiff alleges three theories for proving Centurion has a policy or custom that caused Jackson's death—delegation of final policymaking authority to Streeter,[57] ratification of Streeter's actions,[58] and a widespread pattern of abuse.[59] Centurion argues Plaintiff's claim improperly imputes liability based on a theory of respondeat superior. Accepting Plaintiff's factual allegations as true, Plaintiff has sufficiently stated a deliberate indifference claim against Defendant Centurion under *Monell* based on final policymaker and ratification theories, but not a widespread pattern of abuse theory.

Plaintiff's allegations sufficiently state a *Monell* claim based upon final policymaker and ratification theories. Plaintiff alleges Defendant Centurion delegated final policymaking authority to Defendant Streeter as the Mental Health Unit Manager at MSP; there was no one who could meaningfully review Streeter's actions with respect to Jackson; Streeter failed to take action to prevent Jackson's suicide when she knew he was suicidal; and Centurion ratified Streeter's actions after the fact and failed to take any remedial action. The Eleventh Circuit held in *Mandel v. Doe* that a county could be liable for a physician assistant's refusal to provide treatment for a prisoner's injured leg because

---

[55] *Id.* at 792 n.16 (citing *Praprotnik*, 485 U.S. at 127).
[56] *Grech v. Clayton County*, 335 F.3d 1326, 1330 (11th Cir. 2003).
[57] Doc. 1 ¶¶ 75–76.
[58] *Id.* ¶¶ 75–78.
[59] *Id.* ¶¶ 57–61, 64–70.

his "medical decisions were subject to no supervision or review, except to the extent that [the physician's assistant] himself, in his sole and unsupervised discretion, deemed appropriate."[60] And "the liberal 'notice pleading' standards embodied in Federal Rule of Civil Procedure 8(a)(2) do not require that a plaintiff specifically plead every element of a cause of action."[61] Plaintiff plausibly alleges that Streeter was a final policymaker for Centurion whose single act directly caused Jackson's death and was approved by Centurion; thus, she states a § 1983 claim against Centurion on final policymaker and ratification theories.

But Plaintiff's allegations that Centurion has created a pattern of constitutional violations through its policy of profit maximization and deficient medical records system relating to a rise in prisoner suicides across the GDC are too conclusory to state a claim. Plaintiff fails to plausibly allege a connection between Centurion's policies and the high rate of prisoner suicide in GDC prisons. The allegations of past violations are too general—Plaintiff does not allege any background information for the prisoner suicides that are alleged constitutional violations, such as when, where, or how they occurred. And their alleged connection to Centurion's policies is too tenuous. Plaintiff fails to sufficiently allege how Georgia's high prisoner suicide rate is caused by Centurion's

---

[60] 888 F.2d 783, 794 (11th Cir. 1989).
[61] *Roe v. Aware Women Center for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001) (citation omitted).

policies. Thus, the theory of a widespread pattern of abuse does not support Plaintiff's deliberate indifference claim against Centurion.

### III. State Law Claims Against Defendants Streeter and Centurion State a Claim Upon Which Relief May Be Granted

Plaintiff alleges that Defendant Streeter's negligence caused Jackson's death, and Defendant Centurion is vicariously liable for Streeter's negligence as her employer. Centurion and Streeter failed to address Plaintiff's state law claims in their Motion to Dismiss and contend for the first time in their reply brief that Plaintiff's state law vicarious liability claim against Defendant Centurion should be dismissed, without citing any applicable authority, because respondeat superior is an improper basis for liability, and Plaintiff's negligence claim against Streeter should be dismissed because she acted reasonably.[62]

First, a party abandons an issue by raising it for the time in a reply brief.[63] But even if properly raised, Plaintiff has sufficiently stated negligence and vicarious liability claims against Defendants Streeter and Centurion. "Under Georgia law, an employer is responsible for the negligent or intentional torts of its employee, provided they are committed by the employee in furtherance and within the scope of the employer's

---

[62] Defendants' Reply Brief [Doc. 22 at 6].
[63] *See Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1313 (11th Cir. 2023) (citing *Sapuppo v. Allstate Floridian Ins.*, 739 F.3d 678, 681–83 (11th Cir. 2014)) (holding a party abandons an issue when it makes only passing references to it, references it as mere background to main arguments, buries it within other arguments, or raises it for the first time in a reply brief).

business."[64] "To state a cause of action for negligence, a plaintiff must establish the following essential elements: (1) a legal duty; (2) a breach of this duty; (3) an injury; and (4) a causal connection between the breach and the injury."[65] Although respondeat superior is insufficient to hold a municipality liable under § 1983,[66] negligence and vicarious liability are separate causes of action under Georgia law, and Plaintiff's allegations state claims for both.

## IV.  Plaintiff's Complaint Is Not a "Shotgun" Complaint

Centurion and Streeter also argue Plaintiff's Complaint should be dismissed as an impermissible shotgun pleading. A "shotgun" pleading includes a complaint that fails "to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading."[67] Although Plaintiff's Complaint contains some extraneous details and sometimes addresses the Defendants collectively, it is not a "shotgun" pleading. Although Plaintiff could have more precisely enumerated her causes of action, the separate causes of action along with the facts supporting each claim are readily discernible.[68] Further, "[t]he fact that defendants are accused collectively does not render

---

[64] *ABM Aviation v. Prince*, 366 Ga. App. 592, 595 (2023) (citing *Lucas v. Beckman Coulter, Inc.*, 348 Ga. App. 505, 508 (2019)).

[65] *Id.* (quoting *R&R Insulation Servs. v. Royal Indem. Co.*, 307 Ga. App. 419, 426 (2010)).

[66] *Snow*, 420 F.3d at 1270 (citing *Harris*, 489 U.S. at 385).

[67] *Beckwith v. BellSouth Telecomms., Inc.*, 146 F. App'x. 368, 371 (11th Cir. 2005) (citation omitted).

[68] *See Cesnik v. Edgewood Baptist Church*, 88 F.3d 902, 905 (11th Cir. 1996) (noting that shotgun pleadings are "framed in complete disregard of the principle that separate, discrete causes of action should be pled in separate counts"); *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996) (observing that in shotgun pleadings, it is "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief").

the complaint deficient. [Plaintiff's Complaint] can be fairly read to aver that all defendants are responsible for the alleged conduct."[69] In addition to the allegations against Defendants collectively, Plaintiff's Complaint contains allegations throughout that are specific to Defendants Streeter, Defendant Centurion, and the remaining Defendants.

Plaintiff's Complaint sufficiently gives Defendants "adequate notice of the claims against them and the grounds upon which each claim rests."[70] Indeed, Defendants had enough notice of Plaintiff's claims to draft a Rule 12 motion seeking dismissal on multiple grounds. "[T]his is not a situation where a failure to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual allegations underlying each count."[71] Moreover, the allegations are "informative enough to permit a court to readily determine if they state a claim upon which relief can be granted,"[72] which the Court did above.

## CONCLUSION

For the reasons explained above, the Court **DENIES** Defendant Centurion and Defendant Streeter's Motion to Dismiss [Doc. 5].

---

[69] *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000).
[70] *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015).
[71] *Id.* at 1323.
[72] *Id.* at 1326.

15

**SO ORDERED,** this 15th day of January, 2025.

                                              S/ C. Ashley Royal_____
                                              C. ASHLEY ROYAL, SENIOR JUDGE
                                              UNITED STATES DISTRICT COURT