IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| MICHELLE PEARSON TUCKER, : <br> individually and as administrator of : <br> the Estate of Clinton Vondell Jackson, : <br>   : <br> Plaintiff, : <br>   : <br> v. : <br>   : <br> WELLPATH, LLC; CENTURION : <br> DETENTION HEALTH SERVICES, : <br> LLC; LEWANA STREETER; BRIYANA : <br> INGRAM; and JADE BANKS; : <br>   : <br> Defendants. : <br> _____ : | No. 5:24-CV-215 (CAR) |

## ORDER ON MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff Michelle Pearson Tucker, individually and as administrator of the Estate of Clinton Vondell Jackson, filed a Complaint alleging violations of Jackson's constitutional rights pursuant to 42 U.S.C. § 1983 and violations of Georgia law following Jackson's suicide while he was incarcerated at Macon State Prison. Defendant Wellpath, LLC has filed a Motion for Judgment on the Pleadings arguing Plaintiff fails to sufficiently allege that Wellpath's customs or policies caused any constitutional violations, and the Court should decline to exercise its supplemental jurisdiction over the remaining state law negligence and respondeat superior claims. For the reasons explained below, Defendant Wellpath's Motion for Judgment on the Pleadings [Doc. 23]

1

is **GRANTED in part and DENIED in part**. Specifically, the Court finds Plaintiff fails to state a § 1983 claim, but the Court will exercise its supplemental jurisdiction over the state law negligence and respondeat superior claims against Defendant Wellpath pursuant to 28 U.S.C. § 1367.

## LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings" pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.[1] "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law."[2] Thus, the standard of review for a motion for judgment on the pleadings is "almost identical to that used to decide motions to dismiss."[3]

When considering a motion for judgment on the pleadings, the Court must accept all well-pleaded facts in the complaint as true and draw all reasonable inferences in favor of the plaintiff, the non-movant.[4] However, "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations."[5] A

---

[1] Fed. R. Civ. P. 12(c).
[2] *Palmer & Cay, Inc. v. Marsh & McLennan Cos.*, 404 F.3d 1297, 1303 (11th Cir. 2005) (internal quotation omitted).
[3] *Doe v. Bd. of Cnty. Comm'rs*, 815 F. Supp. 1448, 1449 (S.D. Fla. 1992).
[4] *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006).
[5] *Long v. Fulton Cnty. Sch. Dist.*, 807 F. Supp. 2d 1274, 1282 (N.D. Ga. 2011) (internal quotation omitted).

complaint will survive judgment on the pleadings if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[6]

## BACKGROUND

Plaintiff is Clinton Vondell Jackson's sister and the administrator of his estate.[7] Jackson was an inmate at Macon State Prison ("MSP") at the time of his death.[8] Plaintiff brought § 1983 deliberate indifference claims against Defendants Wellpath, LLC ("Wellpath"), Centurion Health Services, LLC ("Centurion"), Lewana Streeter, Jade Banks, and Briyana Ingram; and state law negligence and respondeat superior claims against Defendants Wellpath, Centurion, and Streeter. Defendants Centurion and Streeter moved to dismiss Plaintiff's claims against them, which the Court denied. Defendant Wellpath now moves for judgment on the pleadings.

Plaintiff alleges the following pertinent facts, which the Court accepts as true at this stage of the proceedings:

The State of Georgia contracts with Wellpath to provide medical services for MSP.[9] Jackson was housed in a segregated cell at MSP from November 13, 2021, until his suicide on October 19, 2022.[10] Two days before his death, on October 17, 2022, Jackson expressed concern for self-harm to an unnamed Wellpath employee who filled out a Wellpath

---

[6] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[7] Complaint [Doc. 1 ¶ 4].
[8] *Id.* ¶ 14.
[9] *Id.* ¶¶ 5, 6.
[10] *Id.* ¶ 15.

3

Rounding Log. No "appropriate action" was taken to protect Jackson in response to his statement. No Wellpath employee referred him for further mental health evaluation, placed him in a cell appropriate for one displaying a danger of self-harm, or appropriately monitored him.[11]

Despite Jackson's suicidal statement to Wellpath's medical staff, Jackson remained in his segregated cell, which contained a light fixture and bedsheet, and he was left unmonitored for hours.[12] On October 19, 2022, at approximately 2:15 p.m., prison staff found Jackson "hanging from the light fixture by his bedsheet, which he had used as a ligature."[13] "A nurse who arrived on the scene within minutes of the discovery" noted "rigor mortis" in Jackson's "upper and lower bilateral extremities," indicating Jackson "was hanging in his cell for at least four to six hours" before he was discovered.[14]

Plaintiff alleges Wellpath "had a pattern and practice of turning a blind eye to their patients in prison," and its customs or policies caused Jackson's death.[15] Plaintiff alleges the GDC "has allowed unacceptable levels of suicide to occur in its facilities," and the "rate of suicide in Georgia's prisons is nearly double the national average and among the highest in the nation."[16]

---

[11] *Id.* ¶ 25.
[12] *Id.* ¶¶ 36, 37.
[13] *Id.* ¶ 40.
[14] *Id.* ¶¶ 42–44.
[15] *Id.* ¶ 57.
[16] *Id.* ¶ 12.

4

Plaintiff alleges the contracts between the GDC and Wellpath "create an improper financial motive to provide as little healthcare as possible."[17] Wellpath is paid a fixed rate per incarcerated person per day, meaning the "less healthcare [it] provide[s], the more [it] profit[s]. The more staff [it] pay[s] and the more services [it] render[s], the more [it] lose[s] money."[18] This arrangement "results in a policy and custom of cost containment."[19] Plaintiff alleges Wellpath has a "direct financial motive" not to provide services in favor of [Centurion, the company that provides mental health and other health services to inmates] providing them; Wellpath and Centurion each "acted pursuant to this motive not to provide care as a policy and custom of cost containment"; and both "abdicated [their] responsibility to act to protect Mr. Jackson because it hoped [the other] would act to save money."[20]

As a result of these policies, Plaintiff contends Wellpath commonly disregards reports by patients of objectively serious symptoms; refuses to provide adequate treatment to patients; refuses to timely conduct evaluations for patients or comply with referrals to specialists; fails to create sensible treatment plans for patients whose health status requires the same; fails to ensure continuity of care; prioritizes profits at the expense of constitutionally adequate care; fails or refuses to arrange for incarcerated men

---

[17] *Id.* ¶ 58.
[18] *Id.* ¶¶ 59, 60, 61.
[19] *Id.* ¶ 61.
[20] *Id.* ¶¶ 6, 64, 65.

to be treated in outside facilities, even when an outside referral is necessary or proper; and refuses and/or fails to provide any medical care whatsoever for defined medical problems.[21]

Plaintiff alleges Wellpath "also ha[s] a practice and custom with regard to records that regularly causes delays and denials of necessary treatment."[22] Specifically, the forms "used for mental health rounding do not require the responsible medical professional completing any evaluation to identify themselves"; "do not require a referral in the event someone expresses suicidal ideation"; and "facilitate unaccountability and frustrate continuity of care, rather than protecting patients."[23] As a result of these customs and policies, "nothing happened in response to [Jackson's] expression of suicidal ideation."[24] "In response to the failures in treatment leading directly to Mr. Jackson's death, [Wellpath] took [no] remedial action, evincing that [its] personnel acted pursuant to training, policy, and custom."[25]

At the relevant time, Plaintiff alleges Wellpath also "had a pattern, practice, and custom of understaffing at its facilities in the GDC," and Wellpath acknowledged that the condition in the GDC made it more difficult to hire and retain staff.[26] "Instead of

---

[21] *Id.* ¶ 66.
[22] *Id.* ¶ 67.
[23] *Id.* ¶¶ 68–70.
[24] *Id.* ¶ 71.
[25] *Id.* ¶ 78.
[26] *Id.* ¶¶ 72, 73.

6

sufficiently increasing pay to ensure proper staff, Wellpath fought with GDC and Centurion for more resources."[27]

Wellpath now seeks a judgment on the pleadings on Plaintiff's § 1983 claim and for the Court to decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

## ANALYSIS

### I.   *Monell* **Liability Claim Against Defendant Wellpath Fails to State a Claim**

"When private entities like Wellpath [ ] contract with a state to provide medical care to inmates, they become 'the functional equivalent of the municipality' because they perform a function traditionally and exclusively within the state's prerogative."[28] For a municipality to be liable under § 1983, the plaintiff must "establish that the government unit has a 'policy or custom' that caused the injury."[29] "A municipality may not be held liable under section 1983 on a theory of respondeat superior."[30] Additionally, the plaintiff must show "a direct causal link between [the] policy or custom and the alleged constitutional deprivation."[31] There are multiple methods of proving custom or policy.[32]

---

[27] *Id.* ¶ 74.
[28] *Hernandez v. GEO Grp.*, No. 23-13653, 2024 WL 3963947, at *4 (11th Cir. Aug. 28, 2024) (citing *Buckner v. Toro*, 116 F.3d 450, 451–52 (11th Cir. 1997)).
[29] *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1328 (11th Cir. 2015) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).
[30] *Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262, 1270 (11th Cir. 2005) (citing *Harris*, 489 U.S. at 385).
[31] *Harris*, 489 U.S. at 385.
[32] *See Mandel v. Doe*, 888 F.2d 783, 791 (11th Cir. 1989).

Plaintiff argues she has sufficiently stated Wellpath has policies or customs that caused Jackson's death under three theories: (1) official policy, (2) decision by a final policymaker, and (3) widespread pattern of abuse. Wellpath contends Plaintiff's allegations are insufficient to state a claim. The Court agrees with Wellpath.

A. Official Policy

A plaintiff can establish custom or policy by identifying an "officially-adopted policy of permitting a particular constitutional violation."[33] Such policy can be in the form of "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by th[e] body's officers."[34] Plaintiff argues she sufficiently alleges Wellpath had official policies of cost containment, medical record design and implementation, and intentional understaffing which caused Jackson's death. The Court disagrees.

Throughout her Complaint, Plaintiff repeatedly alleges Wellpath has various unconstitutional patterns, practices, and customs. Plaintiff contends for the first time in her Response that these are Wellpath's *official* policies. But Plaintiff did not allege this in her Complaint, nor can it be plausibly inferred that these are official policies. Plaintiff cannot amend her Complaint through her Response.[35] Thus, Plaintiff fails to state a deliberate difference claim against Wellpath based on an official policy theory.

---

[33] *Grech v. Clayton County*, 335 F.3d 1326, 1330 (11th Cir. 2003).

[34] *Brown v. Neumann*, 188 F.3d 1289, 1290 (11th Cir. 1999) (citing *Praprotnik*, 485 U.S. at 121).

[35] *See Huls v. Llabona*, 437 F. App'x 830, 833 n.5 (11th Cir. 2011) (citing *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)) ("Because [the plaintiff] raised this argument for the first time in his

### B. <u>Final Policymaker Theory</u>

"[U]nder certain circumstances, municipal liability may be imposed for a single decision by a municipal policymaker."[36] But "the mere delegation of authority to a subordinate to exercise discretion is not sufficient to give the subordinate policymaking authority. Rather, the delegation must be such that the subordinate's discretionary decisions are not constrained by official policies and are not subject to review."[37] The official must be "the final policymaker for the municipality with respect to the subject matter in question."[38] Further, "[i]f the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the [defendant] because their decision is final."[39]

Plaintiff contends for the first time in her Response that the unnamed Wellpath employee referenced in her Complaint is Wellpath's final policymaker. But Plaintiff did not allege this in her Complaint and cannot amend her Complaint through her Response.[40] Plaintiff alleges Jackson threatened self-harm to this unidentified employee who examined Jackson two days before his death, but he or she failed to take any

---

response to [the defendant's] motion to dismiss, instead of seeking leave to file an amended complaint, pursuant to Fed. R. Civ. P. 15(a), it was not properly raised below.").

[36] *Mandel*, 888 F.2d at 792 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)).

[37] *Id.* (citing *City of Louis v. Praprotnik*, 485 U.S. 112, 125–28 (1988)).

[38] *Id.* at 793.

[39] *Id.* at 792 n.16 (citing *Praprotnik*, 485 U.S. at 127).

[40] *See Huls*, 437 F. App'x at 833 n.5) (citing *Gilmour*, 382 F.3d at 1315) ("Because [the plaintiff] raised this argument for the first time in his response to [the defendant's] motion to dismiss, instead of seeking leave to file an amended complaint, pursuant to Fed. R. Civ. P. 15(a), it was not properly raised below.").

9

appropriate action in response to his threats of self-harm.[41] For an official to have final policymaking authority, their decisions cannot be "subject to meaningful administrative review."[42] Plaintiff has failed to allege this employee's name, job title, employment responsibilities, or any other facts that could allow for the reasonable inference that the unnamed employee was a final policymaker for Wellpath.[43]

Here, Plaintiff failed to allege this unnamed employee was Wellpath's final policymaker and only makes this argument in response to the Motion for Judgment on the Pleadings. The Court need not accept inferences not supported by facts in the Complaint.[44] Plaintiff's allegations instead amount to respondeat superior, which is an improper basis to hold a contractor liable under § 1983.[45]

C. <u>Widespread Pattern of Abuse Theory</u>

"[I]n cases involving unconstitutional acts of low-level municipal employees, the plaintiff may prove custom or policy by showing a pattern of unconstitutional acts."[46] Plaintiff alleges Wellpath has practices and customs of cost containment, deficient medical record design and implementation, and intentional understaffing that caused Jackson's death. Plaintiff alleges these practices have caused a pattern of constitutional

---

[41] Doc. 1 ¶ 24.
[42] *See Scala v. City of Winter Park*, 116 F.3d 1396, 1401 (11th Cir. 1997) (collecting cases).
[43] Further, Plaintiff could have clearly alleged this Wellpath employee was a final policymaker because she clearly alleged Defendant Streeter was a final policymaker for Centurion. *See* Doc. 1 ¶ 75.
[44] *Long v. Fulton Cnty. Sch. Dist.*, 807 F. Supp. 2d 1274, 1282 (N.D. Ga. 2011) (internal quotation omitted).
[45] *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 693–94 (1978).
[46] *Mandel*, 888 F.2d at 791 (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985)).

violations—namely, a high rate of suicide in GDC prisons. But Plaintiff fails to allege how Wellpath's policies caused this pattern of violations. Without more information about the suicides, such as when, at what prison, or how they occurred, the Court cannot reasonably infer that Wellpath's various policies and customs caused them. Plaintiff fails to plausibly allege Wellpath's policies caused a pattern of constitutional violations; thus, the theory of a widespread pattern of abuse does not plausibly support Plaintiff's deliberate indifference claim against Wellpath.

## II. The Court Will Exercise Supplemental Jurisdiction over Plaintiff's State Law Claims Against Defendant Wellpath

Having dismissed Plaintiff's federal claims against Wellpath, the Court must now determine whether it should exercise supplemental jurisdiction over the remaining state law negligence and respondeat superior claims,[47] which Wellpath opposes. The Court may decline to exercise supplemental jurisdiction over non-diverse state law claims if: (1) the claim raises a novel or complex issue of state law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling

---

[47] *See* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article II of the United States Constitution.").

11

reasons for declining jurisdiction.[48] Additionally, in deciding whether or not to exercise supplemental jurisdiction over pendent state law claims under § 1367(c), a court should also consider the interest of judicial economy, convenience, fairness to the litigants, and comity.[49]

Here, although the federal claim against Wellpath must be dismissed, both federal and state law claims against Defendants Centurion, Streeter, Ingram, and Banks remain part of this case. These remaining claims arise from the same case or controversy as the state law claims against Wellpath and are closely connected to them; as such, remanding the claims to state court would not be in the interest of judicial economy, convenience, or fairness to the litigants. Thus, the Court finds it appropriate to continue exercising its supplemental jurisdiction over the state law claims against Wellpath pursuant to 28 U.S.C. § 1367.

## CONCLUSION

For the reasons explained above, the Court **GRANTS in part and DENIES in part** Defendant Wellpath's Motion for Judgment on the Pleadings [Doc. 23]. Specifically, the Court finds Plaintiff's § 1983 claim fails to state a claim but will continue exercising its supplemental jurisdiction over the state law claims against Defendant Wellpath pursuant to 28 U.S.C. § 1367.

---

[48] 28 U.S.C. § 1367(c).
[49] *See Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1569 (11th Cir. 1994).

**SO ORDERED,** this 14th day of May, 2025.

                                                S/ C. Ashley Royal_____
                                                C. ASHLEY ROYAL, SENIOR JUDGE
                                                UNITED STATES DISTRICT COURT